# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# GREENEVILLE

| | | |
|---|---|---|
| FIGEL G. RHEA,<br>      Petitioner, | ) <br> ) <br> ) | |
| v. | ) <br> ) | No. 2:06-CR-33 <br> No. 2:10-CV-223 |
| UNITED STATES OF AMERICA,<br>      Respondent. | ) <br> ) | |

## MEMORANDUM OPINION

Figel Guy Rhea ("petitioner" or "Rhea"), a federal prisoner, has moved to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, [Doc. 65], and has filed a supplemental motion, [Doc. 67]. The respondent has not been ordered to file a response and none is necessary.[1] The Court has determined that it plainly appears from the motions and the record of prior proceedings that the petitioner is not entitled to relief, that no evidentiary hearing is necessary,[2] and that the motion lacks merit. For the reasons which follow, the petitioner's § 2255 motion and supplemental motion will be denied.

**I.     Procedural Background**

Rhea was initially arrested and charged in this Court on May 30, 2006, in a three count criminal complaint filed by Kimberly Coleman, an officer with the United States Forest

---

[1]  *See* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

[2]  *Id.*

Service, [Doc.1]. Rhea was charged in Count I with being a felon in possession of a firearm in violation of 18 U.S.C. § 924(g)(1), in Count II with being a felon in possession of ammunition in violation of 18 U.S.C. § 924(g)(1), and in Court III with possession of marijuana in violation of 21 U.S.C. § 844(a)(1). Rhea was subsequently indicted by the federal grand jury on June 13, 2006, in a four count indictment, [Doc. 11], which charged him in Count I with possession of ammunition by a convicted felon in violation of 18 U.S.C. § 924(g)(1), in Count II with being a felon in possession of a firearm in violation of 18 U.S.C. § 924(g)(1), in Count III with being a felon in possession of ammunition in violation of 18 U.S.C. § 924(g)(1), and in Count IV with possession of marijuana in violation of 21 U.S.C. § 844(a)(1). Pursuant to a negotiated plea agreement, [Doc. 37], and an amended plea agreement, [Doc. 42], Rhea pled guilty to Count III of the indictment on August 7, 2006. Rhea's plea agreements were made pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and the parties agreed that the appropriate sentence in the case was 180 months "since the defendant is subject to the armed career criminal enhancement of 18 U.S.C. § 924(e)."

A presentence report ("PSR") was ordered. Based on a total offense level of 30 and a criminal history category of VI, petitioner's advisory guidelines range was determined to be 168 to 210 months imprisonment. Because of his status as an armed career criminal, however, his restricted guideline range was 180 to 210 months. No objections to the PSR were filed by either the petitioner or by the government, both parties asked the Court to accept the plea agreement, and, at a sentencing hearing on February 26, 2007, the Court

accepted the Rule 11(c)(1)(C) plea agreement, sentenced the petitioner to a sentence of 180 months as to Count III and dismissed Counts I, II and IV of the indictment. Judgment was entered on March 2, 2007. [Doc. 51].

On March 15, 2007, Rhea filed a notice of appeal, [Doc. 52]. On April 18, 2008, the Sixth Circuit granted counsel's motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and affirmed Rhea's judgment of conviction and sentence. On July 8, 2008, petitioner filed the instant motion.[3]

## II.     Factual Backgournd

At the same time as the plea agreement, the parties entered into an "agreed factual basis," [Doc. 38]. The agreed factual basis contained a stipulation of facts to establish a factual basis for the guilty plea. The facts stipulated to are:

> On May 26, 2006, Figel G. Rhea, also known as "Buddy" was recorded purchasing Remington .22 caliber short ammunition on store surveillance video tape at Wal Mart in Elizabethton, Tennessee. He was in possession of the same ammunition when arrested on May 28, 2006.
> Rhea has five felony breaking and entering convictions

---

[3] Petitioner's motion was styled as "Motion To Reinstate Defendant's Right To Direct Appeal And For Appointment Of Appeal Counsel." In the motion, Rhea alleged that his appellate counsel had been ineffective and that the mandatory minimum sentence to which he had been sentenced had been "abolished by the Supreme Court." He asked the Court to reinstate his direct appeal rights and to appoint counsel. Even though the allegations made by Rhea in his motion are similar to those which would be raised in a § 2255 proceeding, the Court was unsure whether Rhea wished to seek collateral relief pursuant to 28 U.S.C. § 2255 and was reluctant to characterize the motion as one made under § 2255 without first affording notice to the petitioner. By order dated May 27, 2009, [Doc. 66], the Court notified Rhea of its intent to characterize the motion as one brought pursuant to 28 U.S.C. § 2255 and gave Rhea the option of withdrawing his motion if he did not wish it to be recharacterized or supplement it with any additional grounds he might wish to raise pursuant to 28 U.S.C. § 2255. On June 12, 2009, Rhea supplemented his previously filed motion and raised several additional grounds of ineffective assistance of counsel. The Court has now recharacterized Rhea's motion as one pursuant to 28 U.S.C. § 2255, [Doc. 69].

> in violation of North Carolina statute 14-54. These crimes were committed on the following dates: 10/3/89, 10/25/90, 1/4/93, 1/25/93, and 1/25/93. A copy of the judgments and statute are attached as an exhibit to this factual basis.
> The Remington ammunition Rhea purchased at Wal Mart is not manufactured in the state of Tennessee.

[Doc. 38]. The judgments and the North Carolina statute were in fact attached to the factual basis as exhibits.

## III. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without

4

substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for

evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3rd Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires that the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal

proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

**IV. Analysis and Discussion**

In his motion, Rhea raises numerous claims which include the following: (1) Counsel was ineffective on appeal because he "failed to discuss viable appeal options with the defendant" before filing an *Anders* brief and motion to withdraw in the Sixth Circuit; (2) that the ammunition possessed by the defendant was purchased "for, and at the request of, defendant's girlfriend, which could lawfully own the bullets," which was a "meritorious defense" to the charge against him; (3) the "mandatory minimum guideline sentencing range[s]" was abolished by the Supreme Court and counsel failed to raise this on appeal; (4) the plea agreement and appellate waiver of rights were entered into with ineffective

assistance of counsel; (5) counsel was ineffective for failing to request a second mental evaluation; (6) petitioner's guilty plea was involuntary because the medication he was taking affected his ability to enter into a voluntary and knowing guilty plea; (7) counsel was ineffective for not making objections to the PSR; (8) counsel was ineffective for not objecting to the armed career criminal enhancement; and (9) counsel was ineffective for leading petitioner to believe that he could get more time if he did not accept the plea agreement offered by the government. Although Rhea's claims are likely procedurally defaulted in large part or covered by the waiver of his right of collateral review, the Court will address each of the claims on its merits, especially in view of Rhea's claim that his waivers were involuntary.

1. **Representation in the Sixth Circuit and the *Anders* Brief**

Rhea first argues that his counsel was ineffective for failing to raise "viable appeal options" in the Sixth Circuit and for filing an *Anders* brief. In the Sixth Circuit, Rhea's counsel, the same counsel who had represented him in the district court, moved to withdraw and submitted a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), in which counsel acknowledged that Rhea had waived his right to appeal in his plea agreement and that his conscientious examination of the record revealed no merit in the appeal. In *Anders*, the Supreme Court considered the dilemma facing a court appointed appellate counsel required to prosecute an appeal from a criminal conviction when his own conscientious examination of the record revealed no merit in the appeal and set forth a procedure which would reconcile the right of an indigent defendant to counsel with the

8

ethical strictures upon counsel generally to advance on behalf of his client only those issues which such counsel honestly believes fairly debatable under the law. Petitioner's counsel followed that procedure here but nevertheless, upon the direction of Rhea, submitted two issues for review: (1) whether Rhea's sentence was reasonable; and (2) whether the district court erred in not ordering further mental evaluation of Rhea during sentencing. Consistent with the *Anders* procedure, Rhea was notified of his right to respond but he filed no response in the Sixth Circuit.

Rhea now raises two issues which he says his attorney should have raised in the Sixth Circuit. First of all, he argues that counsel failed to raise a "meritorious defense" that he had purchased the ammunition in this case at the request of his girlfriend who could lawfully own the ammunition and, secondly, he faults his attorney for failing to claim on appeal that the mandatory minimum sentence had been abolished by the Supreme Court. Both issues are completely meritless for the reasons set forth below, and petitioner cannot show any deficient performance on the part of counsel with respect to these two issues. In any event, he knowingly and voluntarily waived his right to raise those issues on appeal and, although he now argues that his waiver was not voluntary, the Sixth Circuit has found otherwise and Rhea is bound by the Sixth Circuit's determination. The Sixth Circuit specifically found that "Rhea's waiver of his appeal rights in his plea agreement was a valid waiver," and that any challenge to the reasonableness of his sentence or the district court's denial of a second mental evaluation were "precluded by Rhea's valid waiver of his right to appeal his sentence." Rhea's right to raise the above stated defense or to claim that the mandatory

9

minimum sentence did not apply to him would likewise be precluded by the waiver.

### 2. Ownership of Ammunition

Although Rhea acknowledges that he possessed the ammunition referred to in Count III of the indictment, he argues that he had a meritorious defense because "[t]he purchase was made for, and at the request of, defendant's girlfriend, which could lawfully own the bullets." He argues that counsel was ineffective for failing to investigate this "meritorious defense."

As noted above, Rhea was found guilty of being a felon in possession of a ammunition in violation of 18 U.S.C. § 922(g). The essential elements of a § 922(g) violation are as follows: (1) The defendant had a previous felony conviction; (2) the defendant possessed ammunition subsequent to his conviction; and (3) the ammunition had traveled in or affected interstate commerce. *United States v. Walker*, 160 F.3d 1078, 1087 (6th Cir. 1998). Rhea appears to argue here that proof that he purchased the ammunition at the request of his girlfriend, who could legally own the ammunition, negates some element of the offense. Ownership of the ammunition in question is not an element of a § 922(g) violation and Rhea stipulated to each of the elements of the offense. Counsel was not deficient for failing to raise this defense, which lacks even arguable merit.

### 3. Mandatory Minimum Sentence

Rhea argues that the "mandatory minimum guideline sentencing range[s]" have been abolished by the Supreme Court. Rhea is correct that the United States Supreme Court did, in *United States v. Booker*, 543 U.S. 220 (2005), rule that the mandatory guidelines were

unconstitutional and the guidelines were thereby rendered advisory. Rhea, however, was sentenced pursuant to a mandatory minimum statutory sentence, not pursuant to advisory guidelines. *Booker* thus has no application to petitioner's situation. It was not deficient performance for counsel to fail to raise such an issue.

    4.    **Ineffective Assistance of Counsel With Respect to Plea Agreement and Appellate Waiver**

Rhea argues in his supplement that he entered into his plea agreement and waiver of appellate rights with ineffective assistance of counsel. He does not further develop his argument, however. This alone is fatal to his claim. As set forth above, a petitioner must allege facts in his § 2255 petition which would justify relief on the petition. Rhea has not done so and only makes a conclusory allegation of ineffective assistance of counsel.

To the extent Rhea is arguing that his plea agreement, and the appellate waivers contained therein, was not entered into knowingly and voluntarily, the record in this case establishes otherwise. First of all, the Sixth Circuit Court of Appeals has already determined that the petitioner acted knowingly and voluntarily with respect to the entry of his plea agreement and the appellate waivers. The Sixth Circuit specifically held that the district court complied fully with the requirements of Rule 11 and determined "that Rhea knowingly and voluntarily entered his guilty plea." Moreover, the Sixth Circuit specifically found that Rhea's waiver of his rights to appeal in his plea agreement was knowing and voluntary. The Sixth Circuit stated: "[a]s Rhea knowingly and voluntarily entered into his written plea agreement, he expressly waived his right to appeal his conviction and sentence." Rhea has

11

set forth no facts which were not known by the Sixth Circuit at the time of that ruling and he is now bound by the Sixth Circuit holding.

Secondly, the transcript of the change of plea hearing, [Doc. 61], clearly dispels any notion that petitioner's guilty plea or waiver of appellate rights was anything other than fully knowledgeable and voluntary. As noted by the Sixth Circuit, the transcript confirms that this Court complied fully with the requirements of Rule 11 and made a specific finding that "the defendant has offered to plead guilty knowingly and voluntarily, [*Id*., p. 23]. Rhea acknowledged during the change of plea hearing that he was pleading guilty because he was in fact guilty, that he understood that he was potentially subject to a maximum term of life imprisonment and he acknowledged at multiple times during the change of plea hearing his understanding that his plea agreement, made pursuant to Rule 11(c)(1)(C), required the Court to impose a 180 month term of imprisonment.

With respect to the appellate waivers contained in his plea agreement, Rhea specifically acknowledged that he understood the waivers and that he had fully discussed the waivers with his attorney. The following exchange took place:

> The Court: Alright, Mr. Reeves, has the defendant has the defendant waived any appeal rights or rights to file a Section 2255 motion in this plea agreement?
>
> Mr. Reeves: Yes, sir, your Honor. The defendant has waived all rights for direct appeal or any motions or pleadings pursuant to 2255. The defendant has waived his right to collaterally attack the plea or sentence in this case, with, of course, the exception of

12

>                    ineffective assistance of counsel or
>                    prosecutorial misconduct unknown to him
>                    at the time of the entry of the plea.
>
> Q.   Mr. Rhea, do you understand that under your plea agreement with the government you have expressly waived certain rights to appeal or to collaterally attack your plea or your sentence as just stated by the United States attorney?
>
> A.   Yes, sir.
>
> Q.   Have you and your attorney discussed this waiver of your rights to appeal and your right to collaterally attack your plea or your sentence in this case?
>
> A.   We sure have.

[*Id.*, p. 20].

### 5. Second Mental Evaluation/Medication

Here again Rhea does not develop his argument. He simply alleges that his attorney failed to request a second mental evaluation based upon the medication he was taking at the time of the sentencing hearing. This Court had ordered an initial mental evaluation prior to Rhea's sentencing in this case and the Bureau of Prisons had determined that he was competent and fully understood the proceedings. Part of the Court's concern at the time it ordered the evaluation was that Rhea might not have been on appropriate medication. He does not identify the medication he was taking nor does he suggest any side effects which would have affected his ability to voluntarily and knowingly enter into his plea agreement. In fact, Rhea's argument on this issue is likewise foreclosed by the decision of the Sixth Circuit on his direct appeal where the Sixth Circuit stated "[t]here is nothing in the

13

transcript of Rhea's plea colloquy to indicate that he was unaware of the charges against him or the consequences of his guilty plea, that he was incompetent to enter the plea, or that the plea was involuntary or unknowing." Likewise nothing in the record supports that Rhea was not competent at any later point, nor does the petitioner ever attempt to show how a further mental evaluation would have even potentially have changed the outcome of his case.

### 6. Failure to Object to PSR/ Armed Career Criminal

Next, Rhea argues that his counsel was ineffective because counsel failed to object to "anything in the P.S.R." or "anything concerning the Armed Career criminal." Once again, Rhea has failed to develop the argument or to allege any facts upon which he bases his conclusory allegations of ineffective assistance of counsel. This alone, as with the prior issue, is sufficient for the Court to deny relief.

Even if considered on the merits, however, there is no basis in the record to conclude that defense counsel could have raised any meritorious objection to the PSR. Rhea had entered into a Rule 11(c)(1)(C) plea agreement and had agreed with the government that he was an armed career criminal and that the appropriate sentence in the case was 180 months, the statutory mandatory minimum. He stipulated as part of his plea agreement that he had sustained four prior breaking and entering convictions under North Carolina law, at least four of which were committed on dates separate from one another. Breaking and entering under North Carolina law is a crime of violence for ACCA purposes. *See United States v. Stark*, 307 Fed. Appx. 935 (6th Cir. 2009). Since Rhea stipulated to the three prior predicate convictions under § 924(e), he was clearly subject to the 15 year mandatory

14

minimum sentence as an armed career criminal.  This issue lacks any merit as well.

### 7. Advice by Counsel That Rhea Could be Subject to a Greater Sentence if He Did not Enter Into the Plea Agreement

Lastly, Rhea argues that his guilty plea in the case was unknowing and involuntary because he was led to believe by counsel that he "would get a lot more time if [he] did not except [sic] this plea."  He fails to show, however, how this advice could be ineffective assistance of counsel.  The information provided by counsel was not erroneous.  Rhea faced a potential sentence by statute of life imprisonment and his guideline range, had he taken the case to trial and been convicted, would have exceeded the 180 month sentence agreed upon.  By entering into the plea agreement under Rule 11(c)(1)(C), Rhea was able to limit his potential term of imprisonment to the mandatory minimum 15 year term.  There is no ineffective assistance of counsel with respect to the advice given by Rhea's attorney that he could face a potentially greater sentence if he did not enter into the plea agreement.

## V. Conclusion

For the reasons set forth above, the Court holds that petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States and his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The

Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standard set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, (2002 *Id*.).

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each issue raised by him.

A separate order will enter.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE